UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re* Petition of<br><br>UNIÓN FENOSA GAS, S.A.<br><br>For an Order to Take Discovery from The Depository Trust Company Pursuant to 28 U.S.C. § 1782 in Aid of a Foreign Proceeding | Civil Action No. 1:20-mc-188 _____ |

# MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE* PETITION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

James E. Berger
Charlene C. Sun
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2100
Fax: (212) 556-2222
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Petitioner*
*Unión Fenosa Gas, S.A.*

<2>
Case 1:20-mc-00188-PAE   Document 2   Filed 04/08/20   Page 2 of 18
</2>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

I.  FACTUAL BACKGROUND ......................................................................................... 3

    A.  THE AWARD AND ONGOING FOREIGN PROCEEDINGS ............................................. 3
    B.  RELATIONSHIP BETWEEN DTC AND EGYPT ............................................................ 5

II. ARGUMENT ................................................................................................................... 6

    A.  THIS PETITION SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C.
        § 1782 ..................................................................................................................... 6
        1.  Respondent Is Found in this District ............................................................ 7
        2.  Discovery Sought Is "For Use" in a Foreign Proceeding ........................... 7
        3.  Petitioner Is an Interested Person ................................................................ 9
    B.  THIS COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF GRANTING
        UFG'S PETITION ................................................................................................... 10
        1.  DTC Is Not a Party to the Foreign Proceedings ....................................... 10
        2.  The English Court Should Be Receptive to this Court's Assistance ........ 11
        3.  The Petition Does Not Implicate any Foreign Proof Gathering
            Restrictions ................................................................................................. 11
        4.  The Discovery Sought Is Not Unduly Burdensome ................................... 12

III. CONCLUSION ............................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
　791 F. App'x 247 (2d Cir. 2019) ....................................................................................... 13

*In re Accent Delight Int'l Ltd.*,
　869 F.3d 121 (2d Cir. 2017) ............................................................................................ 7, 8

*In re Application of Hill, No. M19-117 (RJH)*,
　2005 WL 1330769 (S.D.N.Y. June 3, 2005) ......................................................................... 9

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
　673 F.3d 76 (2d Cir. 2012) .................................................................................................. 6

*In re Escallón*,
　323 F. Supp. 3d 552 (S.D.N.Y. 2018) ................................................................................ 12

*In re Euromepa, S.A.*,
　154 F.3d 24 (2d Cir. 1998) ............................................................................................. 7, 9

*In re Euromepa*,
　51 F.3d at 1100 (2d Cir. 1995) .................................................................................... 11, 12

*In re Ex Parte Application of Kleimar N.V.*,
　220 F. Supp. 3d 517 (S.D.N.Y. 2016) ................................................................................ 13

*Gushlak v. Gushlak*,
　486 F. App'x 215 (2d Cir. 2012) ......................................................................................... 1

*In re Hansainvest Hanseatische Inv.-GmbH*,
　364 F. Supp. 3d 243 (S.D.N.Y. 2018) ................................................................................ 11

*In re Hornbeam Corp.*,
　722 F. App'x 7 (2d Cir. 2018) ............................................................................................. 1

*In re Iraq Telecom Ltd.*,
　No. 18MC458LGSOTW, 2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019),
　*reconsideration denied*, No. 18MC458LGSOTW, 2019 WL 5080007
　(S.D.N.Y. Oct. 10, 2019) ............................................................................................. 10, 11

*In re O'Keeffe*,
　650 F. App'x 83 (2d Cir. 2016) ................................................................................ 1, 10, 11

*In re Sargeant*,
　278 F. Supp. 3d 814 (S.D.N.Y. 2017) .................................................................................. 9

*In re Stati*,
   No. CV 15-MC-91059-LTS, 2018 WL 474999 (D. Mass. Jan. 18, 2018) ................................8

*In re WinNet R CJSC*,
   No. 16MC484 (DLC), 2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017).....................................12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004).................................................................................................. *passim*

*La Suisse, Société d'Assurances Sur La Vie v. Kraus*,
   62 F. Supp. 3d 358 (S.D.N.Y. 2014).........................................................................................9

*Lancaster Factoring Co. v. Mangone*,
   90 F.3d 38 (2d Cir. 1996)..........................................................................................................7

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015).....................................................................................6, 7, 10, 12

*RTI Ltd. v. Aldi Marine Ltd.*,
   523 F. App'x 750 (2d Cir. 2013)...............................................................................................9

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004)...........................................................................................6, 7, 10

**Statutes**

22 U.S.C. § 1650a ...........................................................................................................................4

28 U.S.C. § 1782.........................................................................................................................1, 6

Section 1782........................................................................................................................ *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 26 ...................................................................................12

Unión Fenosa Gas, S.A. ("**UFG**" or "**Petitioner**"), by its undersigned counsel, respectfully submits this memorandum of law in support of its *Ex Parte* Petition (the "**Petition**") for an order pursuant to 28 U.S.C. § 1782 ("**Section 1782**") authorizing it to seek discovery from The Depository Trust Company ("**DTC**" or "**Respondent**") in accordance with the attached subpoenas *duces tecum* and *ad testificandum* (together, the "**Subpoenas**").[1]

## PRELIMINARY STATEMENT

This Petition arises from court proceedings (the "**English Proceedings**") commenced by UFG against the Arab Republic of Egypt ("**Egypt**") in the Commercial Court, Queen's Bench Division of the Courts of England and Wales (the "**English Court**") to enforce an arbitral award (the "**Award**") rendered against Egypt on August 31, 2018. Egypt has refused to voluntarily pay the Award, which orders it to pay US$ 2.013 billion (plus interest and costs) to UFG. *See* Declaration of Charlene C. Sun ("**Sun Decl.**"), ¶ 2.

Petitioner intends to make a motion in the English Proceedings to execute funds belonging to Egypt that will be used to service and/or redeem Egypt's sovereign bonds. *See* Declaration of Sarah Y. Walker ("**Walker Decl.**") ¶ 11.

Egypt's payment obligations under its sovereign bond program comprise the following:

- According to an April 26, 2010 prospectus (the "**2020/2040 Prospectus**"), Egypt filed with the Luxembourg Stock Exchange: (i) redemption payments to holders of

---

[1] Petitioner seeks discovery on an *ex parte* basis in accordance with the accepted practice in this Court and in many other courts to seek relief pursuant to 28 U.S.C. § 1782 on an *ex parte* basis. *See e.g., In re Hornbeam Corp.*, 722 F. App'x 7, 10 (2d Cir. 2018) (noting there is no impropriety in bringing Section 1782 applications *ex parte* since respondents may move to quash); *In re O'Keeffe*, 650 F. App'x 83, 85 (2d Cir. 2016) (rejecting the suggestion that bringing a Section 1782 application *ex parte* is "impermissible or improper"); *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.") (collecting cases).

its "U.S.$1,000,000,000 5.75% Notes due 2020" ("**2020 Notes**") maturing on April 29, 2020; (ii) semi-annual interest payments to holders of its "U.S.$500,000,000 6.875% Notes due 2040" (the "**2040 Notes**") due every April 30 and October 30 until maturity;

- According to the May 26, 2015 base prospectus of the Global Medium Term Notes Programme (the "**GMTN Base Prospectus**") on the Luxembourg Stock Exchange, redemption and interest payments to holders of its U.S.$10,000,000,000 Notes ("**GMTN Notes**") made pursuant to the "Final Terms" of each tranche of notes issued; and,

- According to the November 16, 2018 Debt Security Programme Prospectus ("**DSP Prospectus**") on the Irish Stock Exchange: (i) semi-annual payments to holders of its Series D Notes and Series E Notes (together the "**DSP Notes**") due every May 10 and November 10 until maturity; (ii) redemption payments to holders of its Series D Notes on November 10, 2026, and to holders of its Series E notes on November 10, 2030. *See* Sun Decl., Exs. B at 3; C at 13; D at 18, 31.

Each of the 2020/2040 Prospectus, the GMTN Prospectus, and the DSP Prospectus (together, "**Egyptian Prospectuses**"), list DTC as a "Clearing System" for the clearance and settlement of the 2020 Notes, 2040 Notes, GMTN Notes, and the DSP Notes (together, "**Notes**"). *Id*. Exs. B at 81; C at 14; D at 32. As the last agent in the payment chain (*i.e.*, the agent immediately before the funds are actually disbursed to the noteholders), DTC is likely to have critical documents and information pertaining to the servicing and redemption of these various debt instruments, including, *inter alia*, the amounts to be disbursed by Egypt, the sources of such funds, Egypt's ownership and possessory interests in those funds, the manner in which the bonds are serviced,

2

and the roles of the various payment agents at each step of the payment process. *Id*. ¶ 11. Thus, Petitioner seeks an order authorizing this Petition and issuance of Subpoenas to DTC. The fleeting nature of financial assets — and the short turn-around times associated with executing and clearing financial transactions — underscore the urgency in UFG's Petition.

As shown below, this Petition meets each of the statutory requirements of Section 1782. Respondent is "found" in this District because it maintains its headquarters and principal place of business here. The discovery sought is highly material and relevant to the issues at stake in ongoing English Proceedings, and is "for use" in those proceedings. Specifically, the documents and information requested will help Petitioner establish the executability of the aforementioned Egyptian assets to satisfy the Award through the English Proceedings. Moreover, each of the *Intel* discretionary factors weighs in favor of the Petitioner. Respondent is a nonparticipant in the English Proceedings and therefore cannot be compelled by the English Court to disclose information or documents. There is nothing to indicate that the English Court will decline U.S. judicial assistance, nor is this discovery request an attempt to circumvent English proof-gathering restrictions. Finally, the request is narrowly tailored to documents and information relating only to payments arising from Egypt's Notes. Accordingly, Petitioner respectfully requests that the Court grant Petitioner's Petition and permit Petitioner to serve the Subpoenas on Respondent.

## I. FACTUAL BACKGROUND

### A. THE AWARD AND ONGOING FOREIGN PROCEEDINGS

On August 31, 2018, a tribunal constituted under the Agreement on the Reciprocal Promotion and Protection of Investments between the Kingdom of Spain and the Arab Republic of Egypt ("**Treaty**") and the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "**ICSID Convention**") issued an arbitral award (the "**Award**")

in favor of UFG and against Egypt in the amount of US$ 2.013 billion (plus interest and costs). *Id.* ¶ 2. The Award relates to Egypt's impairment of UFG's investments in Egypt, which the arbitral tribunal found constituted a breach of the Treaty. *Id.* ¶ 2.

Egypt refused to comply with the Award voluntarily. Sun Decl. ¶ 3; Walker Decl. ¶ 4. Accordingly, on October 17, 2018, pursuant to 22 U.S.C. § 1650a and the ICSID Convention, Petitioner commenced an action in the United States District Court for the District of Columbia to recognize and enforce the Award ("**D.D.C. Action**"). Sun Decl. ¶ 3. On November 19, 2018, UFG commenced the English Proceedings. Walker Decl. ¶ 4.

On December 19, 2018, the English Court granted an order registering the Award and giving it the force of an English court judgment ("**English Recognition Order**"). Walker Decl., Ex. A.

On January 8, 2019, Egypt filed an application with ICSID to set aside the Award. Sun Decl. ¶ 5. The ICSID Annulment Committee, an *ad hoc* tribunal convened to consider Egypt's application to set aside the Award, entered a stay of enforcement of the Award on October 18, 2019. *Id*. This order, however, was conditioned on Egypt's posting of security. *Id*. On January 24, 2020, when Egypt failed to provide the required security, the Annulment Committee lifted the stay. Sun Decl., Ex. A. Although the set aside proceedings remain pending, no stay of enforcement is in effect in England, and the Award is fully enforceable there at this time.[2] Walker Decl. ¶ 7.

---

[2] Notwithstanding the enforceability of the Award, Petitioner and Egypt have engaged in lengthy settlement negotiations. Sun Decl. ¶ 7. On February 27, 2020, UFG and Egypt executed a series of agreements for the purpose of settling Egypt's liabilities arising under the Award. *Id.* Petitioner is hopeful that all settlement conditions will be timely achieved to result in the discharge of Egypt's pecuniary obligations to UFG. However, given the history of this dispute, and until the occurrence of such discharge, Petitioner is forced to continue to pursue its rights under the Award and resulting English Recognition Order. This includes maintaining Petitioner's ability to execute against Egyptian assets if/when necessary.

### B.    RELATIONSHIP BETWEEN DTC AND EGYPT

UFG intends to move in the English Court to execute the English Recognition Order against funds that will be used to service and/or redeem Egypt's Notes. As discussed below, Petitioner believes these funds come into the possession of DTC prior to their ultimate payment to note holders, and that DTC, as a critical agent in the bond structure, is likely to be in possession of the agreements governing the bonds. Under English law, a judgment creditor of a foreign state may only execute upon property owned by the foreign state that is in use or intended for use for "commercial purposes." Walker Decl. ¶ 8. Thus, to determine whether the funds are susceptible to attachment and execution in aid of the English Recognition Order, the English Court will have to consider and adjudicate questions pertaining to Egypt's ownership and possessory interests in those funds under English law. Walker Decl. ¶ 11. The agreements entered into by and between Egypt and the various agents involved in its sovereign debt program are likely to govern and illustrate those ownership and possessory interests, thus making those documents — which are not publicly available — critical to any judicial consideration of whether the monies used to fund Egypt's bond repayments are subject to attachment and execution under English law. Sun Decl. ¶ 12; Walker Decl. ¶ 11.

The Egyptian Prospectuses describe DTC as a "clearing system" and "clearing agency" for the Egyptian Notes. Sun Decl., Exs. B at 81; C at 14; D at 32. A clearing agent performs the exchange of securities on behalf of buyers and sellers and functions as a central securities depository by providing central custody of securities. This role involves accepting deposits of securities issues, executing book-entry deliveries, recording book-entry pledges of those securities, and processing related income distributions. Here, DTC is charged with settling and clearing transactions that occur between Egypt and the holders of the Notes. Sun Decl. ¶ 11. Therefore,

as noted above, DTC is likely to have possession of the governing agency and other agreements outlining the roles of the various agents and knowledge of the flow of funds resulting in these payments.  Sun Decl. ¶ 11.  These documents and information will be of significant assistance to the English Court in considering whether the funds being used to make the subject payments are susceptible to attachment and execution under English law.  Walker Decl. ¶ 13.

**II.     ARGUMENT**

     **A.     THIS PETITION SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782**

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  The statute reads, in pertinent part:

> *The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal* ....The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal *or upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court….

28 U.S.C. § 1782 (emphasis added).

Section 1782 permits a district court to grant an application where petitioners can establish: "(1) that the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) that the discovery [is] for use in a proceeding before a foreign tribunal, and (3) that the application [is] made by a foreign or international tribunal or 'any interested person.'"  *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (quoting *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (per curiam)); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citing statutory factors); *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (citing same).

6

Petitioner satisfies each of these three statutory requirements. First, the party from whom discovery is sought — DTC — is found within this District. Second, the documents and deposition testimony requested by Petitioner is plainly "for use" in foreign court proceedings. Third, Petitioner qualifies as an "interested person" under Section 1782, as the holder of the Award and the resulting English Enforcement Order.

### 1. Respondent Is Found in this District

The first statutory requirement is that the "person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made." *Schmitz*, 376 F.3d at 83.

DTC's principal place of business is 55 Water Street, New York, New York, 10041-0099, United States. Sun Decl., Exs. C at 194; D at 35. Accordingly, Petitioner has satisfied the first requirement under Section 1782.

### 2. Discovery Sought Is "For Use" in a Foreign Proceeding

The information sought in the Subpoenas is for use in an ongoing foreign litigation proceeding, *i.e.*, in the English Proceedings. Whether discovery is "'for use in a [foreign] proceeding'" is analyzed "according to the particular facts of each case." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 129, 131 (2d Cir. 2017). As a starting point, the Second Circuit has held that this requirement is met if a proceeding is "adjudicative in nature." *In re Euromepa, S.A.*, 154 F.3d 24, 27 (2d Cir. 1998). The question of whether a proceeding is "adjudicative" is judged by whether it is before an impartial tribunal. *In re Lancaster Factoring Co.*, 90 F.3d 38, 41 (2d Cir. 1996) (an adjudicative proceeding is one in which an "adjudicative function is being exercised"). Additionally, the requested discovery should provide "some advantage or serve some use in the proceeding." *Mees*, 793 F.3d at 298 (adopting a plain meaning of the phrase "for use in a

7

proceeding"). This includes instances when an applicant exhibits the "practical ability to inject the requested information into [the] foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d at 132. Further, the Supreme Court has held that Section 1782 "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," but includes proceedings that are "within reasonable contemplation." *Intel*, 542 U.S. at 258.

Here, Petitioner satisfies the "for use" requirement since the documents and information requested from DTC are to be used in the English Proceedings. First, there is simply no question that the English Court's determination concerning whether particular assets are subject to attachment and execution under English law is adjudicative in nature. Specifically, the English Court will be required to make factual findings concerning the possessory and ownership interests in the funds and apply English law to determine whether those interests leave the funds susceptible to execution. Walker Decl. ¶ 11. Second, there is no question that UFG would be able to "inject" the information it obtains from DTC into the English Proceedings, where it will have to prove, *inter alia*, Egypt's ownership and possessory interests in the funds used to make payments on the Notes, as well as the commercial nature of those funds. *Id*. ¶¶ 8, 11. Other courts have recognized that Section 1782 may be used in aid of enforcement to examine the ownership interests in property held by third parties for purposes of executing an arbitration award in foreign courts where the ownership of those assets had been or was likely to be contested. *In re Stati*, No. CV 15-MC-91059-LTS, 2018 WL 474999, at *4 (D. Mass. Jan. 18, 2018) (recognizing that although the arbitral award in that proceeding was final, discovery requested was in aid of foreign enforcement

proceedings which required adjudication of property ownership and immunity issues before a "a neutral, adjudicative decision-maker.")[3]

In sum, the discovery sought through this Petition is unquestionably relevant to execution proceedings in England and will provide centrally relevant evidence that will assist both Petitioner, in carrying its burden, and the English Court in adjudicating the issues of fact and law that will be presented by the enforcement motions.[4]  Walker Decl. ¶ 11.

### 3. Petitioner Is an Interested Person

Petitioner is clearly an "interested person" within the meaning of Section 1782. An "interested person" is one who has "significant 'participation rights' in a proceeding [and] 'possesses a reasonable interest in obtaining judicial assistance.'" *RTI Ltd. v. Aldi Marine Ltd.*, 523 F. App'x 750, 751–52 (2d Cir. 2013) (citing *Intel*, 542 U.S. at 256). Petitioner is a party to English Proceedings to enforce the English Enforcement Order, and as such is clearly an interested person for purposes of the statute.

---

[3] *See also In re Sargeant, III*, 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017) (holding that discovery to assist in the sequencing of fraud and the prosecution of attachment proceedings satisfied the "for use" requirement (though ultimately denying discovery on other Section 1782 statutory grounds)). Similarly, certain bankruptcy and liquidation proceedings also constitute adjudicative proceedings for purposes of Section 1782. *See e.g.*, *In re Euromepa*, 154 F.3d at 27; *see also In re Hill*, 2005 WL 1330769, at *4 (S.D.N.Y. June 3, 2005) (holding that a Section 1782 petition in aid of a liquidation proceeding that involved asset recovery, the determination of the value of the debtors' estates, and the adjudication of creditors' claims is adjudicative in nature).

[4] Courts routinely have found that civil proceedings before the English courts satisfy the "foreign or international" for purposes of Section 1782. *See, e.g.*, *In re Catalyst Managerial Servs.*, 680 F. App'x 37, 41 (2d Cir. 2017) (authorizing discovery from sixteen banks for use in a wrongful-contract-termination proceeding in the United Kingdom); *La Suisse, Société d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014) (permitting discovery of communications between counsel and broker for use in a proceeding in the United Kingdom). Accordingly, Petitioner has satisfied the second requirement under Section 1782.

B. **THIS COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF GRANTING UFG'S PETITION**

Where, as here, the statutory elements are satisfied, a district court may grant discovery in its discretion. *Schmitz*, 376 F.3d at 83–84; *Mees*, 793 F.3d at 297 (stating same). This discretion is exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees*, 793 F.3d at 298 (citing *Schmitz*, 376 F.3d at 83–84).

To aid the exercise of such discretion, the *Intel* Court delineated the following four factors for consideration: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the Unites States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65; *Mees*, 793 F.3d at 298 (reciting same factors). Each of these factors tips strongly in favor of granting the Petition.

1. **DTC Is Not a Party to the Foreign Proceedings**

The first *Intel* factor instructs district courts to consider whether the requested discovery is within the foreign tribunal's jurisdictional reach and thus accessible without Section 1782 aid. *Intel*, 542 U.S. at 264–65. Thus, courts routinely grant discovery when the respondent is not a party to the foreign proceeding. *In re O'Keeffe*, 650 F. App'x 83, 85 (2d Cir. 2016) (granting discovery against nonparty); *In re Iraq Telecom Ltd.*, No. 18MC458LGSOTW, 2019 WL 3798059,

at *4 (S.D.N.Y. Aug. 13, 2019), *reconsideration denied*, No. 18MC458LGSOTW, 2019 WL 5080007 (S.D.N.Y. Oct. 10, 2019) (granting discovery against nonparty banks because they held quality records of accounts); *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 250 (S.D.N.Y. 2018) (granting discovery against third party).

Here, since DTC is not a party to the English proceedings, the first *Intel* factor weighs in favor of discovery.

### 2. The English Court Should Be Receptive to this Court's Assistance

Likewise, the second *Intel* factor concerning the receptivity of discovery by the foreign tribunal also weighs in favor of Petitioner. When considering this factor, courts will find receptivity unless the respondent can proffer "authoritative proof" that a foreign tribunal would reject evidence obtained with the aid of Section 1782. *In re O'Keeffe*, 650 F. App'x at 85 (noting the absence of evidence that the foreign court would be unreceptive to U.S. judicial assistance); *In re Euromepa, S.A.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *In re Iraq Telecom*, 2019 WL 3798059, at *4 (requiring authoritative proof that a foreign tribunal would "reject" discovery).

In the present case, Petitioner has no reason to believe that the English court will not be receptive to accepting evidence obtained through the present Petition. To the contrary, English courts' approach to the use of Section 1782 discovery is one of "acceptance and support." Walker Decl. ¶ 13. Indeed, any evidence gathered through Section 1782 discovery here would promote efficiency in the enforcement of the English Recognition Order, and aid the English court's ability to find facts and apply the relevant test under English law. *Id.* Thus, the second *Intel* factor also weighs in favor of discovery.

### 3. The Petition Does Not Implicate any Foreign Proof Gathering Restrictions

The third *Intel* factor requires this Court to consider "whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. A foreign proof gathering restriction is implicated when an applicant has already exhausted available remedies in foreign tribunals and seeks another "bite at the apple" after having already been denied the discovery assistance it seeks. *In re Escallón*, 323 F. Supp. 3d 552 (S.D.N.Y. 2018) (rejecting request to compel testimony when individual already testified by order of Colombian court); *In re WinNet R CJSC*, No. 16MC484 (DLC), 2017 WL 1373918, at *8 (S.D.N.Y. Apr. 13, 2017) (rejecting a request to compel discovery after Russian court already decided the issue on the merits).

Here, Petitioner has *prima facie* established the need for discovery, which it seeks in good faith and in an effort to execute the judgment, which Egypt has failed to pay voluntarily. Petitioner has not been denied similar discovery in England, where the Award is enforceable pursuant to the English Recognition Order. Walker Decl. ¶ 13. Accordingly, the third *Intel* factor supports granting the Petition.

### 4. The Discovery Sought Is Not Unduly Burdensome

Finally, Petitioner's discovery request is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 245. A district court evaluating a Section 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure. *Mees*, 793 F.3d at 302. To the extent that a court finds that a discovery request is overbroad, it should consider whether that defect can be cured through a more limited granting of discovery. *Id.*; *In re Euromepa*, 51 F.3d at 1101 ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by

12

simply denying relief outright."). This includes the use of confidentiality stipulations and protective orders. *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 252 (2d Cir. 2019) (requiring respondent to show reasons that its concerns could not otherwise be addressed through a protective order); *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (noting that confidentiality issues should be addressed by a protective order).

In the present instance, the discovery request is narrowly tailored to documents and information that DTC owns, possesses, or controls, relating specifically to the Egyptian Notes and specific dates, transactions, and entities involved in Egypt's payments to holders of its Notes. Moreover, any legitimate concerns about burden that may arise after DTC conducts a reasonable search of its records can be managed through the meet and confer process, in which Petitioner will engage in good faith.

In sum, Petitioner meets all of the necessary elements required to obtain discovery pursuant to Section 1782 and all relevant discretionary considerations weight in favor of granting this Petition.

## III. CONCLUSION

For the forgoing reasons, as well as those set forth in the accompanying Declarations of Charlene C. Sun and Sarah Y. Walker, Petitioner respectfully requests that the Court retain jurisdiction over this matter and grant the Petition authorizing Petitioner to issue Subpoenas to DTC in the form attached hereto as **Exhibit A**, authorize Petitioner to issue additional subpoenas for the production of documents and/or depositions of DTC as Petitioner reasonably deems appropriate and as are consistent with the Federal Rules of Civil Procedure, and for such other and further relief as this Court deems just and proper.

Dated: April 8, 2020

        Respectfully submitted,

        */s/ James E. Berger*

James E. Berger
Charlene C. Sun
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2100
Fax: (212) 556-2222
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Petitioner*

14