**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

*In re* Petition of

UNIÓN FENOSA GAS, S.A.

For an Order to Take Discovery from The
Depository Trust Company Pursuant to 28
U.S.C. § 1782 in Aid of a Foreign Proceeding

---

Civil Action No. __1:20-mc-188__

**Declaration of Charlene C. Sun in
Support of *Ex Parte* Petition for
Assistance in Aid of a Foreign
Proceeding Pursuant to 28 U.S.C. §
1782**

CHARLENE C. SUN hereby declares as follows:

1.      I am an attorney at King & Spalding LLP, counsel to Unión Fenosa Gas, S.A. ("**UFG**"),

the Petitioner herein. I am duly admitted to practice in New York, the District of Columbia, and

Texas, and am a member in good standing of the bar of this Court. The matters discussed herein

are within my personal knowledge.

2.      This petition is in aid of English judicial proceedings (the "**English Proceedings**") to

enforce a $2.013 billion arbitral award (plus interest and costs) ("**Award**") issued on August 31,

2018 in ICSID Case No. ARB/14/4 in favor of UFG and against the Arab Republic of Egypt

("**Egypt**"). The Award was issued by an arbitral tribunal (the "**Tribunal**") following arbitration

proceedings conducted in accordance with the Agreement on the Reciprocal Promotion and

Protection of Investments between the Kingdom of Spain and the Arab Republic of Egypt

("**Treaty**") and the Convention on the Settlement of Investment Disputes between States and

Nationals of Other States (the "**ICSID Convention**"). The Award relates to Egypt's impairment

of UFG's investments in Egypt, which the arbitral tribunal constituted a breach of the Treaty.

3.     Egypt refused to comply with the Award voluntarily.  On October 17, 2018, pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, UFG requested the United States District Court for the District of Columbia ("**D.D.C. Court**") to enter an order recognizing and enforcing the ICSID Award.  Egypt was successfully served with process under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, on November 17, 2018, more than 15 months ago.

4.     On November 19, 2018, UFG commenced the English Proceedings in the Commercial Court, Queen's Bench Division of the Courts of England and Wales.

5.     On January 8, 2019,  pursuant to Article 52 of the ICSID Convention, Egypt filed an application to set aside the Award.  Further, on October 18, 2019, the ICSID Annulment Committee granted Egypt's request for a stay of enforcement of the Award.  The stay was conditioned on Egypt's posting of security.

6.     On January 24, 2020, the Annulment Committee lifted the stay of enforcement of the Award due to Egypt's failure to post security.  A true and correct copy of the "Annulment Committee's Decision to Terminate the Stay of Enforcement" is attached hereto as **Exhibit A**.

7.     On February 27, 2020, after lengthy settlement negotiations, UFG and Egypt executed a series of agreements for the purpose of settling Egypt's liabilities arising under the Award. However, these agreements remain executory and subject to the parties achieving a number of conditions precedent, many of which remain unfulfilled at this time.  Accordingly, UFG is free to, and is, continuing to prosecute proceedings to enforce the Award, including, inter alia, the English Proceedings.  The effectiveness of the settlement is also contingent upon security and guarantees from Egypt as well as approvals from third parties.

8.      Petitioner has learned that Egypt makes frequent redemption and interest payments under its sovereign debt program which may be targeted to satisfy Egypt's outstanding debt to UFG. Specifically, Egypt's payment obligations under its sovereign bond program comprise of the following:

- According to an April 26, 2010 prospectus Egypt filed with the Luxembourg Stock Exchange ("**2020/2040 Prospectus**"): (i) redemption payments to holders of its "U.S.$1,000,000,000 5.75% Notes due 2020" ("**2020 Notes**") maturing on April 29, 2020; (ii)   semi-annual interest payments to holders of its "U.S.$500,000,000 6.875% Notes due 2040" (the "**2040 Notes**")  due every April 30 and October 30 until maturity;

- According to the May 26, 2015 base prospectus of the Global Medium Term Notes Programme ("**GMTN Base Prospectus**") on the Luxembourg Stock Exchange, redemption and interest payments to holders of its U.S.$10,000,000,000 Notes ("**GMTN Notes**"), made pursuant to the "Final Terms" of each tranche of notes issued; and,

- According to the November 16, 2018 Debt Security Programme Prospectus ("**DSP Prospectus**") on the Irish Stock Exchange: (i) semi-annually payments to holders of its Series D Notes and Series E Notes (together the "**DSP Notes**") due every May 10 and November 10 until maturity; (ii) redemption payments to holders of its Series D Notes on November 10, 2026, and to holders of its Series E notes on November 10, 2030.

A true and correct copy of the 2020/2040 Prospectus is attached as **Exhibit B**.  A true and correct copy of the GMTN Prospectus is attached as **Exhibit C**.  A true and correct copy of the DSP Prospectus is attached as **Exhibit D**.

9.      Each of the 2020/2040 Prospectus, the GMTN Prospectus, and the DSP Prospectus (together, "**Egyptian Prospectuses**"), list DTC as a "Clearing System" for the clearance and settlement of the 2020 Notes, 2040 Notes, GMTN Notes, and the DSP Notes (together, "**Notes**"). According to the Egyptian Prospectuses, "DTC is a limited-purpose trust company organised under the New York Banking Law, a 'banking organisation' within the meaning of the New York Banking Law, a member of the Federal Reserve System, a 'clearing corporation' within the meaning of the New York Uniform Commercial Code and a 'clearing agency' registered pursuant to the provisions of Section 17A of the Exchange Act."  Ex. D at 34.  *See also* Ex. B at 93.

10.     Petitioner intends to move in the English Proceedings to execute funds belonging to Egypt that will be used to service and/or redeem the Notes.

11.     Since it is charged with settling and clearing transactions that occur between Egypt and the holders of the Notes, DTC is as a critical agent in the bond structure.  Petitioner believes that funds come into the possession of DTC prior to their ultimate payment to note holders, and that DTC, is likely to be in possession of the agreements governing the bonds.  Thus, DTC is likely to have critical documents and information (*e.g.*, governing agency and other agreements) pertaining to the servicing and redemption of these various debt instruments, including, *inter alia*, the amounts to be disbursed by Egypt, the sources of such funds, Egypt's ownership and possessory interests in those funds, and the roles of the various payment agents at each step of the payment process.

12.     Upon information and belief, these documents are not publicly available.

13.     Upon information and belief, DTC's principal place of business is 55 Water Street, New York, New York, 10041-0099, United States.  Exs. C at 194, D at 35.

14.     As of the filing of this petition, the Annulment Committee has not yet ruled on Egypt's request to annul the Award.

15.     As of the filing of this petition, the Award remains unpaid by Egypt.

I affirm under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
        April 8, 2020

                                                    _____

                                                    Charlene C. Sun